Citation Nr: 1702619 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 13-27 494 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUE

Entitlement to an initial rating in excess of 30 percent prior to January 16, 2015, and to a rating in excess of 70 percent thereafter, for the service-connected posttraumatic stress disorder (PTSD).


REPRESENTATION

Appellant represented by: Vietnam Veterans of America


ATTORNEY FOR THE BOARD

A. Adamson, Counsel


INTRODUCTION

The Veteran served on active duty from May 1963 to April 1976. 

This matter is before the Board of Veteran's Appeals (BVA or Board) on appeal from a March 2011 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Newark, New Jersey, which awarded service connection for PTSD and assigned a 10 percent initial rating, effective December 7, 2010. In July 2013 the RO increased the initial rating to 30 percent. 

In May 2015, the Board remanded the issue for additional development. In July 2015, the RO issued a rating decision awarding a 70 percent rating for PTSD, effective January 16, 2015.

In an August 2015 statement, the Veteran requested a Board hearing. However, in December 2016, his representative withdrew the request.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. Prior to January 16, 2015, the Veteran's PTSD did not cause either occupational and social impairment with reduced reliability and productivity, or occupational and social impairment with deficiencies in most areas. 

2. At no time during the pendency of this claim did the Veteran's PTSD cause total occupational and social impairment. 


CONCLUSION OF LAW

The criteria for an initial rating in excess of 30 percent prior to January 16, 2015, and to a rating in excess of 70 percent thereafter, for PTSD are not met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.130, DC 9411 (2016).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2014), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2016), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim. 

The PTSD appeal arises from the Veteran's disagreement with the initial rating assigned following the grant of service connection. A notice letter was mailed to the Veteran in December 2010, prior to the grant of service connection for PTSD. VA has no further obligation to provide notice under 38 U.S.C.A. § 5103 on this downstream element of the claim. See 38 C.F.R. § 3.159(b)(3)(1). Once service connection is granted, the claim is substantiated, further notice as to the "downstream" elements concerning the initial rating and effective date is not required, and any defect in the notice is not prejudicial. See Dingess v. Nicholson, 19 Vet. App. 473, 490-491 (2006); see also Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

The record also reflects that all available post-service medical evidence identified by the Veteran has been obtained, to include VA clinical records. The Veteran was afforded appropriate VA examinations, most recently in June 2015. The Veteran has not asserted, and the evidence of record does not show, that his PTSD has increased significantly in severity since the most recent examination. Neither the Veteran nor his representative has identified any outstanding evidence that could be obtained to substantiate the claim; the Board is also unaware of any such evidence. Accordingly, the Board will address the merits of the Veteran's claim. 

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2016). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321(a), 4.1 (2016). 

In appeals of initial ratings, the Board must consider whether "staged ratings" are warranted. Fenderson v. West, 12 Vet. App. 119 (1999). 

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

Legal Criteria: Posttraumatic Stress Disorder

Effective August 4, 2014, VA promulgated an interim final rule amending the portion of its Schedule for Rating Disabilities dealing with mental disorders to remove outdated DSM references by deleting references to the DSM-IV and DSM-IV Text Revision and replacing them with references to the updated version, the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition. 79 Fed. Reg. 45,093-02 (Aug. 4, 2014). This rule expressly states that its provisions do not apply to claims that have been certified to or were pending before the Board, the Court of Appeals for Veterans Claims, or the U.S. Court of Appeals for the Federal Circuit prior to August 4, 2014. Accordingly, because the Veteran's appeal was certified to the Board before that time, the DSM-IV version applies in this case. See October 2013 VA Form 8.

Under the applicable rating criteria for mental disorders, including the Veteran's service-connected PTSD, a 30 percent rating is warranted for occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 38 C.F.R. § 4.130, Diagnostic Code 9411 (2016).

A 50 percent rating is warranted for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g. retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. Id. 

A 70 percent rating is warranted for occupational and social impairment with deficiencies in most areas, such as work, school, family relationships, judgment, thinking or mood, due to such symptoms as: suicidal ideation; obsessional rituals that interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. Id. 

The maximum rating of 100 percent is warranted for total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id. 

The symptoms associated with the psychiatric rating criteria are not intended to constitute exhaustive lists, but rather serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436, 443 (2002). Thus, the Board will consider whether "the evidence demonstrates that a claimant suffers symptoms or effects that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the diagnostic code," and, if so, the "equivalent rating will be assigned." Id. 

A veteran may only qualify for a given initial or increased rating based on mental disorder by demonstrating the particular symptoms associated with that percentage in the rating criteria, or others of similar severity, frequency, and duration. Vazquez-Claudio v. Shinseki, 713 F.3d 112 (Fed. Cir. 2013). Although a veteran's symptomatology is the primary consideration in assessing veteran's disability rating based on a mental disorder, the regulation also requires an ultimate factual conclusion as to the veteran's level of impairment in "most areas" for that rating. Id.; 38 C.F.R. § 4.130. 

Factual Background

Shortly before the Veteran's December 2010 claim, the Veteran underwent a mental health assessment at the East Orange VA Medical Center. At that time, persistent sleep problems were documented, with an indication of two hours of sleep per night at most. The Veteran reported feeling on guard with anxiousness building up. Euthymic mood was observed, but no depression and normal speech. The Veteran reported that he was volunteering locally at that time. His thoughts were relevant and organized, his judgment intact and his insight good. He was assessed as having a "Global Assessment of Functioning" (GAF) score of 68. In this regard, the GAF scale ranges from zero to 100, reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." See Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM-IV). According to the DSM-IV, GAF scores between 61 and 70 indicate "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." 

The Veteran underwent VA examination for PTSD in February 2011. He reported to the examination "calm" and "compliant" and his psychomotor activity was noted to be within normal limits. The examiner described his thought processes as linear and thought content as "non-bizarre." He denied suicidal ideation, homicidal ideation, hallucinations and paranoid ideation. Insight and judgment were noted as good. The Veteran reported continued trouble sleeping, although he noted an improvement to five to six hours of sleep per night since starting medication. He avoided crowds and loud noise as much as possible. His relationships with his wife, children and grandchildren were noted as good, and he reported having a small group of friends that he plays carded with from time to time, as well as his major source of social interaction beyond family being within the church. 

The examiner characterized the Veteran's PTSD as mild and assessed a GAF score of 82, which indicates, if symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g. difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning. The Veteran reported being retired with no intention to return to formal employment, but gave no indication of an inability to work.

Clinical records throughout this claim period continue to show sleep disturbance associated with PTSD. In July 2013, the Veteran was noted to have sleep disturbance and reported isolating himself. He had no suicidal ideation, homicidal ideation, hallucinations, delusions or paranoia. August 2013 notes indicate similar symptoms with an additional notation that the Veteran had no depressive thoughts. A September 2013 note shows the report of approximately three hours of sleep per night, no significant depressive or anxiety symptoms, a good appetite, continued volunteering and helping his family members by driving them places. Again, he reported no suicidal ideation, homicidal ideation, hallucinations, delusions or paranoia. A November 2013 note described the Veteran as afraid to sleep due to nightmares. His wife was noted as good support. The Veteran continued volunteering. He reported irritability and a preference to be alone, but again described no suicidal ideation, homicidal ideation, hallucinations, delusions or paranoia. Another November 2013 note showed him as having good insight and good impulse control with normal speech. He was alert and oriented. In December 2013, the Veteran reported improved sleep to four hours per night, improved irritability and he also noted that the holiday season makes him happy. He expressed a desire to socialize more.

A January 2014 mental health assessment shows ongoing poor sleep and continued volunteering. The Veteran reported with fair grooming and hygiene, appropriate attire and normal speech. His thought process was logical and goal directed and his insight and judgement were fair. He reported no suicidal ideation, homicidal ideation, hallucinations, delusions or paranoia. By March 2014, he requested an increase in medication due to an increase in nightmares. No other change in symptoms was reported. 

An April 2014 note shows a decrease in the nightmares and an improvement in sleep following the medication adjustment. He was sleeping three to four hours per night. The Veteran reported keeping busy with church and volunteering. He reported no depressive thoughts, anhedonia, hopelessness, worthlessness, guilt or poor energy. Also, no suicidal ideation, homicidal ideation, hallucinations, delusions or paranoia. In May 2014, the Veteran described his sleep pattern as feeling tired during the day; falling asleep at 6:30 p.m.; waking up at 9:00 p.m.; taking naps until 5:00 a.m.; then getting up at 6:00 a.m. with a nap from 12:30 p.m. to 1:00 p.m. June and July 2014 clinical notes show the Veteran describing an increase in irritability, but a continued good relationship with this wife. He confirmed no difficulty concentrating or remembering names. He again reported no suicidal ideation, homicidal ideation, hallucinations, delusions or paranoia. 

In August 2014, a clinician described the Veteran's insight and judgment as fair, his thoughts as goal directed, his grooming and hygiene as fair, and his impulse control as fair. October 2014 notes show he continued with his volunteering. December 2014 and January 2015 notes show that the Veteran reported no new complains, and continued activities as a volunteer. 

On January 16, 2015, the Veteran's representative submitted a statement in support of the Veteran's claim. The representative suggested the Veteran's symptoms were moderate and caused moderate difficulty in social and occupational functioning. The representative requested an updated VA examination.

In March 2015 clinical records, there was no change from prior reports. The Veteran was alert, oriented, with fair grooming and hygiene, normal speech, logical and goal directed thoughts, and fair insight and judgment. April 2015 notes show the Veteran reporting he was feeling better and feeling calmer. He was still volunteering and he reported using deep breathing and self-talk techniques to manage irritability. By June 2015, however, he reported a lack of sleep and concentration and that he does not like being around people and that volunteering makes him irritable. The Veteran also reported some recent issues with memory at that time. The clinician suggested an increase in medication was warranted.

The Veteran was afforded an updated VA examination in June 2015. At this time, he reported an increase in nightmares, intrusive memories and irritability. He reported a decrease in his recreational activities. He also continued to report chronic sleep impairment. Suicidal and homicidal ideation was denied. The examiner suggested the Veteran had occupational and social impairment with reduced reliability and productivity. The Veteran continued to report good relationships with his wife and children. He reported giving up recreational activities like singing in church and playing cards with friends, but that he continued to enjoy reading and listening to music. 

The Veteran reported that he had recently given up volunteering due to increased stress associated with that activity. The examiner described the Veteran's symptoms as including anxiety, chronic sleep impairment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships and difficulty in adapting to stressful circumstances, including work or a work like setting. At the time of the examination, he was fully alert and oriented, with a euthymic mood and an affect that was congruent to content. He denied suicidal and homicidal ideation. The examiner concluded that the Veteran's PTSD symptoms would not preclude gainful employment in a setting where he could work independently.

Following this examination, the RO awarded a 70 percent rating, effective January 16, 2015, the date of the representative's statement indicating a worsening of the PTSD.

In August 2015, the Veteran submitted a statement. He indicated that he had stopped volunteering.

In December 2016, the Veteran's representative submitted a statement suggesting the higher rating was warranted at an earlier date, because March 2014 VA clinical records show an increase in nightmares and June 2015 records show increased irritability.

While the Board recognizes the notation of increased nightmares and irritability as early as March 2014, there is no indication of symptoms indicative of occupational and social impairment with reduced reliability and productivity; or of occupational and social impairment with deficiencies in most areas, such as work and family relations, judgment, thinking, or mood; or of total occupational and social impairment, at any time prior to January 16, 2015. 

He did not have deficiencies in most of the areas needed for a 70 percent rating. He maintained satisfactory relationships with family members and did not have deficiencies in thinking or judgement. He did not attempt schooling, but his ability to engage in volunteer activities at a homeless shelter and participate in church activities following his retirement is not consistent with deficiencies in work. Even if there were deficiencies in mood; he did not have deficiencies in most areas.

The Veteran's PTSD was predominantly described during this period as manifested by ongoing sleep impairment, fair insight and judgment, and a lack of suicidal ideation, homicidal ideation, hallucinations, delusions or paranoia. Nightmares and irritability notably increased; however, these symptoms do not suggest an overall increase of the PTSD severity to the level of 50, 70 or 100 percent ratings under the General Rating Formula for Mental Disorders. There is simply no basis for a rating higher than 30 percent prior to January 16, 2015, even with consideration of the increased symptoms noted by the Veteran's representative.

Moreover, since January 16, 2015, there is no basis upon which to award a 100 percent rating for PTSD. he Veteran's PTSD is not manifested by gross impairment of thought processes or communication, persistent delusions or hallucinations, grossly inappropriate behavior, persistent danger of hurting self or others, intermittent ability to perform activities of daily living, disorientation of time or place, memory loss for names of close relatives, own occupation or own name. There is no basis upon which to deem the Veteran totally occupationally and socially impaired due to PTSD. He has remained married to his wife of many years, and maintained a "positive relationship" with his adult children, one of whom lives with him. A rating in excess of 70 percent since January 16, 2015, is therefore not warranted.

In sum, the symptoms of the Veteran's PTSD were of such frequency and duration throughout the pendency of this claim so as to result in an overall severity adequately recognized by the 30 and 70 percent ratings presently assigned. No increase for either period on appeal is warranted and the Veteran's appeal is, therefore, denied. 

Additional Considerations 

The Board takes notice of the Veteran's reports of symptoms related to his PTSD, including those made in written statements, and at his clinical and VA examination visits. He is competent to testify as to the severity of the symptomatology associated with his PTSD. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Additionally, his statements are presumed credible, as his reported symptoms have remained consistent in both his lay testimony and the medical record. However, the evaluations assigned for this disability take the social impairment, sleep impairment, irritability and other such symptoms into consideration in accordance with 38 C.F.R. § 4.130. Therefore, the Veteran's assigned ratings appropriately contemplate the scope of his complaints.

The Board has also considered the potential application of other various provisions, including 38 C.F.R. § 3.321(b)(1), for exceptional cases where schedular evaluations are found to be inadequate. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). According to the regulation, an extraschedular disability rating is warranted upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1) (2016); Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

In Thun v. Peake, 22 Vet. App. 111, 115-16 (2008), the Court set forth a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, as a threshold issue, the Board must determine whether the veteran's disability picture is contemplated by the rating schedule. If so, the rating schedule is adequate and an extraschedular referral is not necessary. If, however, the veteran's disability level and symptomatology are not contemplated by the rating schedule, the Board must turn to the second step of the inquiry, that is whether the veteran's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." These include marked interference with employment and frequent periods of hospitalization. Third, if the first and second steps are met, then the case must be referred to the VA Under Secretary for Benefits or the Director of the Compensation Service to determine whether, to accord justice, a veteran's disability picture requires the assignment of an extraschedular rating.

In this case, the evidence of record does not identify any factors which may be considered to be exceptional or unusual with respect to the Veteran's service-connected PTSD. There is no unusual clinical picture presented, nor is there any other factor which takes the disability outside the usual rating criteria. The Veteran's complaints showing occupational and social impairment with deficiencies in most areas are adequately contemplated by the rating criteria under 38 C.F.R. § 4.130, Diagnostic Code 9411 (2016). Under Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014), a Veteran may also be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture the impact of all the service-connected disabilities experienced. When considering whether referral is warranted based on the combined effects of a Veteran's service-connected disabilities, the Board first must compare the Veteran's symptoms with the assigned schedular ratings. Yancy v. McDonald, 27 Vet. App. 484 (2016). In this case, in addition to PTSD, the Veteran is service connected for residuals of prostate cancer, which is rated as 20 percent disabling; lumbar levo-scoliosis, which is rated noncompensably; and erectile dysfunction, which is rated noncompensably. There is no indication in the record, nor does the Veteran claim, that the four service-connected disabilities, when considered together, produce a combined effect taking the overall severity of the Veteran's service-connected conditions outside of the realm of consideration under the schedular criteria. The combined ratings assigned adequately compensate the Veteran for the overall impairment caused by his combined service-connected disabilities.

As the Veteran's disability picture, when considered singly or in combination with other service-connected disabilities, is contemplated by the rating schedule, the threshold issue under Thun is not met and any further consideration of governing norms or referral to the appropriate VA officials for extraschedular consideration is not necessary.

Finally, the Board has considered whether an inferred claim for a total rating based on individual unemployability (TDIU) under Rice v. Shinseki, 22 Vet. App. 447 (2009) has been raised. Neither the Veteran, nor his representative has repo that he is unemployability. Moreover, there is no suggestion in the record that his PTSD renders him unemployable. Rather, the record establishes that the Veteran has been retired throughout the pendency of this claim, and volunteered throughout most of it. Although he recently stopped volunteering due to stress, the VA examiners in this case deemed him employable if he could work independently. His work experience in positions with the postal service would qualify him to work independently. Therefore, the Board finds that the issue of entitlement to a TDIU based on the disability at issue has not been raised in this case.

ORDER

An initial rating in excess of 30 percent prior to January 16, 2015, and a rating in excess of 70 percent thereafter, for the service-connected PTSD is denied.



____________________________________________
Mark D. Hindin
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs